UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. SEAMAN,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA BUSINESS BANK, et al.,<br><br>Defendants. | Case No. 13-cv-02031-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF No. 32 |

## I. INTRODUCTION

Defendants California Business Bank ("CBB") and individual officers and directors Raffi D. Krikorian, Michael Maluccio, Cole W. Minnick, Jr., Jane Auserwald, Peggy Hansen, Mladen Buntich, Steven Hong, Biff Naylor, Kenneth Thomas, Gary Cross, Ellwood Johnson, and N. Aaron Yashouafar ("Individual Defendants") (collectively with CBB, "Defendants") have moved to dismiss the complaint in this action for failing to state a claim upon which relief can be granted. ECF Nos. 30 & 32. Having considered the Complaint and the moving papers, and good cause appearing, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motions.

## II. BACKGROUND

### A. Factual and Procedural History

The facts most pertinent to this dispute are statements contained in CBB's Private Placement Memorandum ("PPM"), on which Investors Prime Fund, LLC and IPF Banc Servicing, LLC (collectively, "IPF") allegedly relied in purchasing CBB's shares of stock. Exh. 1 to Motion, ECF Nos. 32-1 through 32-6. The Court considers the PPM submitted by Defendants because the complaint refers to and necessarily relies on the PPM, it is central to Plaintiff's claim, and no party

questions its authenticity.[1] See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (citing Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)). As for the additional facts, the Court "construe[s] the complaint in the light most favorable to the plaintiff, taking all [his] allegations as true and drawing all reasonable inferences from the complaint in [his] favor." Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005). Although a Rule 12(b)(6) motion requires that the "court must accept as true all of the allegations contained in a complaint," that standard "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

CBB is a banking corporation headquartered in Los Angeles, California and incorporated under the laws of the state of California. Complaint ¶ 8. In March 2010, CBB entered into a consent order with the Commissioner of Federal Deposit Insurance Corporation ("FDIC"). Id. ¶ 21. As part of the consent order, CBB was required to (1) increase Tier 1 capital by $5 million and develop and implement a capital plan; (2) adopt a revised policy for determining adequacy of the Allowances for Loan and Lease Losses ("ALLL"), a measure of the reserve for bad debts; (3) provide periodic reports to the regulatory agencies; and (4) provide CBB's shareholders with a description of the Consent Order. Id.

As required by the Consent Order, CBB offered for sale a minimum of 1,666,667 shares of its common stock, at a price of $3.00 per share, beginning on September 28, 2010. Id. ¶ 23. In connection with the offering, CBB issued the PPM on September 28 to inform potential investors of the financial state of CBB as well as the risks entailed in purchasing CBB's stock. Id. ¶ 24; Exh. 1 to Motion.

---

[1] Defendants have also made a Request for Judicial Notice, in which they ask the Court to take notice of the June 21, 2012 complaint in S.E.C. v. Small Business Capital Corp., et al., Case No. CV12-03237 EJD (N.D. Cal.). ECF No. 32-8. Courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (citation omitted). However, Defendants did not actually attach the complaint in Small Business Capital; they attached a copy of the complaint in this action. See ECF No. 32-8. Therefore, the request is DENIED.

On June 28, 2011, IPF purchased 330,000 shares of CBB common stock at $3.00 per share for a total purchase price of $990,000, before CBB was forced to recognize $3 million in losses. Complaint, ¶ 24. Sometime after June 2011, after a regulatory examination of its financial records, CBB was forced to recognize approximately $3 million in losses that reduced the value of CBB's stock. Complaint, ¶ 34.

Plaintiff Thomas Seaman ("Plaintiff"), in his capacity as court-appointed receiver of IPF, has brought this securities fraud complaint ("the Complaint") against Defendants. ECF No. 1. The Complaint brings causes of action for (1) securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"); (2) material misrepresentation under California Corporations Code Section 25401; (3) joint and several liability of management principals under California Corporations Code Sections 25401, 25501, and 25504; (4) fraud and deceit, and negligent misrepresentation; (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200 *et seq.*, and (6) relief by imposition of constructive trust. Id.

CBB and the Individual Defendants have filed separate motions to dismiss. ECF Nos. 32-7 ("CBB Mot.") & 32-10 ("Ind. Defts. Mot.").

**B.     Legal Standards**

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is barred as a matter of law. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

Rule 9(b)'s heightened pleading standard under applies to securities fraud actions. Semegen v. Weidner, 780 F.2d 727, 730-31 (9th Cir. 1985). Rule 9 requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). The

complaint must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Edward v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004).

Securities fraud plaintiffs must also satisfy the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). In re VeriFone Holdings, Inc. Sec. Litig., 704 F.3d 694, 701 (9th Cir. 2012). Under the PSLRA, a securities fraud plaintiff must plead both falsity and scienter with particularity. See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

### C. Jurisdiction

Plaintiff brings a claim under Sections 10(b) and 20(a) of the Exchange Act. Complaint ¶ 3. As this cause of action arises under a federal statute, the Court has subject matter jurisdiction over that cause of action pursuant to 28 U.S.C. § 1331.

## III. ANALYSIS

### A. Section 10(b) of the Exchange Act

Count One of the Complaint alleges violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b). Under Section 10(b), it is unlawful for "any person . . . [t]o use or employ, in connection with the purchase sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe as necessary." Id. SEC Rule 10b-5 makes it unlawful to "make any untrue statements made, in light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5(b). To state a claim for a violation of Section 10(b), a private plaintiff must plead: (1) a material misrepresentation or omission made by the defendant; (2) scienter; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. See Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, 552 U.S. 148, 157 (2008).

Plaintiff claims that Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by knowingly or recklessly making misleading statements and omissions that affected the

integrity of the market for shares in CBB. Complaint ¶¶ 2, 38-39. In particular, Plaintiff alleges that Defendants failed to disclose in the PPM several loans to CBB that either defaulted, were questionably secured, or were issued to CBB directors. Id. ¶¶ 25-31. Plaintiff argues that if "Defendants properly recognized and adequately disclosed the problems with these loans, the PPM would have stated a loan portfolio that was at least $5,000,000 less than what was actually stated, and CBB would not have represented that it had $8,300,000 in Tier-1 capital." Id. ¶ 25.

Defendants move to dismiss the Complaint on the grounds that Plaintiff fails to adequately plead falsity, scienter, materiality, or loss causation. Defendants also argue that the alleged misrepresentations in the PPM concerning loan loss reserves are not actionable because they are protected by the "bespeaks caution" doctrine.

### 1. Falsity

Under the PSLRA, securities fraud plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Courts have characterized this statute, in conjunction with Rule 9(b), as requiring that a private plaintiff plead falsity with particularity. See Zucco Partners, 552 F.3d 981 at 990.

Defendants argue that "CBB's Loan Loss Reserves reflect CBB management's opinions and judgments about the collectability of CBB's loan portfolio . . .." CBB Mot., at 9:15-16; see also Ind. Defts Mot., at 5:21-26. Therefore, relying primarily on Fait v. Regions Fin. Corp., 655 F.3d 105, 112-13 (2nd Cir. 2011), Defendants contend that CBB's statements about loan loss reserves are not actionable as misleading statements under Section 10(b) because they are statements of opinion which are not "worded as guarantees, supported by specific facts." CBB Mot., at 8:11-12.

While determining the appropriate allowance for loan losses is often a matter of managerial judgment and discretion, "allegations of misstatements regarding loan loss reserves are actionable under the Exchange Act." In re Washington Mutual, Inc. Sec. Litig., 259 F.R.D. 490,

507 (W.D. Wash. 2009); see also In re Wells Fargo Sec. Litig., 12 F.3d 922 (9th Cir. 1993), superseded by statute on other grounds ("There is nothing unique about representations and omissions regarding loan loss reserves that removes them from the purview of the antifraud provisions of the federal securities laws").[2]

      Fait did not hold that statements of opinion were *per se* nonactionable as a matter of law. Fait applied the rule that for statements of opinion to be actionable in securities cases, a "plaintiff must allege that defendant's opinions were both false and not honestly believed when they were made." 655 F.3d at 113 (citing Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1095 (1991)). "Requiring plaintiffs to allege a speaker's belief in, and the falsity of, the opinions or beliefs expressed ensures that their allegations concern the factual components of those statements." Fait, 655 F.3d at 113. This rule has been applied in other circuits, including the Ninth Circuit. See Rubke v. Capitol Bancorp Ltd, 551 F.3d 1156, 1162-65 (9th Cir. 2009) (statements of opinions are actionable in securities claims, including those under Section 10(b), if "the statements were both objectively and subjectively false or misleading"); see also Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 775 (1st Cir. 2011) ("[a]n opinion may still be misleading if it does not represent the actual belief of the person expressing the opinion . . . or knowingly omits undisclosed facts tending seriously to undermine the accuracy of the statement").

      Plaintiff argues that Defendants' statements about CBB's loan loss reserves and loan portfolio are actionable "because at the time CBB made the statements it was aware of undisclosed facts that directly undermined their accuracy." Opp. 9:1-2. Specifically, the Complaint alleges that at the time the PPM was issued, CBB knew the following information about the status of its loans:

      1.      One of CBB's three loans to the Maturin Group, in the amount of $1 million, had

---

[2] While Wells Fargo is a pre-PSLRA case, the fact that private securities fraud plaintiffs now face higher pleading standards does not affect the underlying substantive law regarding whether statements about loan loss reserves remain actionable.

matured and not been paid off. Complaint ¶ 26.

2. An $833,000 loan to David Shalom had matured and had not been paid off. Id. ¶ 31. A "September 2010" appraisal of the loan showed a loan-to-value ratio of over 95%. Id. Pursuant to Financial Accounting Standards Board standards, this required CBB to implement a loan loss reserve of $236,141, which CBB did not implement until June 30, 2011, after IPF's stock purchase. Id.

3. Several loans to Tom Dean, totaling approximately $3 million, were "supported by unconventional collateral of questionable value, stale appraisals, and whose borrowers' financials and/or appraisals had not been updated for many years." [sic] Id. ¶ 27.

4. Loans by CBB to Defendant N. Aaron Yashouafar, then a CBB Director, "were not properly collateralized (no updated or recent appraisals on property that CBB had made loans on in second position). Id. ¶ 28. "CBB was also aware that the first position lender on the collateral properties recorded a notice of default against the properties, thus endangering CBB's collateral, which stood in a second position to the first position lender."

Defendants state that "only the Shalom loan matured prior to the issuance of the PPM." Reply Brief, ECF No. 35, at 4:3-4. But the Complaint actually states that one of the three Maturin Group loans had also defaulted at the time the PPM issued. ¶ 26.

However, the remaining facts in the Complaint provide little factual support for the contention that CBB knew its loan loss reserve representations in the PPM were false or misleading. It is unclear from the allegations of the Complaint whether the "September 2010" appraisal of the Shalom loan was completed and disclosed to CBB before the PPM issued on September 30. (In fact, since the PPM states that it was "based upon unaudited financial information as of June 30, 2010," the information may have had to be available even earlier. PPM, at CBB-21.)

It is also unclear when CBB became aware that its collateral in the Yashouafar loan had

been imperiled. (Paragraph 28 of the Complaint, like others in this section, is written in a manner that makes it difficult to determine which facts were true and known to CBB at the time the PPM was issued, and which events occurred later.) Moreover, the Complaint's allegations that the Dean and Yashouafar loans were "not properly collateralized" and "supported by unconventional collateral" are vague and conclusory, and do not cite the specific facts upon which the allegations are based.

Ultimately, the Complaint contains only two clearly alleged facts tending to show that CBB subjectively knew on September 30, 2010 that it was making a false representation about the adequacy of its loan loss reserves: the fact that two of its loans were in default. Against this, the Court considers the overall tone of the PPM, which paints an overwhelmingly cautionary picture of the nature of the investment. See PPM, at CBB-20, -23, -35 (stating that the offering involves a "HIGH DEGREE OF RISK," is suitable only for those who "CAN AFFORD THE LOSS OF THEIR ENTIRE INVESTMENT," and warning that CBB's stock might lose value or become worthless) (capitalization in the original).

The law in this area presumes that opinions are not actionable without allegations of subjectively known falsity. It also imposes a heightened pleading standard requiring particularity. Taken together, these standards require more than the allegations in the complaint to plead a claim under Section 10(b) based on an offeror's representations about the adequacy of its loan loss reserves.

Furthermore, as the Individual Defendants argue, the Complaint lacks any specific allegations supporting those specific individual defendants' subjective belief regarding the inaccuracy of the statements. Ind. Defts Mot., at 8:6-10:7. "Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard." S. Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008).[3]

---

[3] The Killinger court was discussing the scienter requirement of the PLSRA, but the reasoning seems equally applicable to determining whether an individual defendant subjectively lacked a belief in the accuracy of his or her statements.

Plaintiff does not respond to this argument in his opposition. The Court finds that the claims would be inadequately pled against the Individual Defendants for this reason even if they were adequately pled against CBB.

Plaintiff also argues that CBB had a duty to update statements made in the PPM in light of "new, different, and material information." Opp.at 10:16-17.[4] Neither the Supreme Court nor the Ninth Circuit have endorsed an affirmative duty to update or correct past statements. See In re Yahoo! Inc. Sec. Litig., 2012 WL 3282819, at *20 (N.D. Cal. Aug. 10, 2012). However, "[i]n the circuits that have found such a duty to update true statements, the courts have said 'that it applies only to statements that are clear, factual, and forward-looking, such that some continuing representation remains alive in the minds of investors when circumstances change.'" Id., 2012 WL 3282919, at *20 (quoting In re Foxhollow Technologies, Inc. Sec. Litig., 359 F. App'x 802, 804-05 (9th Cir. 2009) (unpublished) (citing cases).

The statements in the PPM regarding the adequacy of CBB's loan loss reserves cannot be characterized as factual and forward-looking. To the contrary, the PPM only characterizes the bank's financial condition as of September 28, 2010, and states specifically that "NOTHING CONTAINED HEREIN IS, OR SHOULD BE RELIED UPON AS, A PROMISE OR REPRESENTATION AS TO THE FUTURE PERFORMANCE OF THE BANK." PPM, at CBB-21 (capitalization in the original). If a duty to update does exist in this circuit, it would not apply to the statements in the PPM characterizing the state of its loan portfolio and loss reserves in September 2010.

**2. Scienter**

Under the PSLRA, a securities fraud plaintiff must plead scienter with particularity. See Zucco Partners, 552 F.3d 981at 990. This represents a pleading standard even higher than Rule 9(b)'s heightened pleading standard, since under Rule 9 "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b).

---

[4] Plaintiff does not make this argument in the portion of his opposition devoted to "falsity," but rather in the portion addressing the "bespeaks caution" doctrine.

9

The scienter required for a PSLRA claim is "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007). "[T]he complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005). The PSLRA's heightened scienter standard requires that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The inference required "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." Tellabs, 551 U.S. at 324. As such, the Court "must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Id. at 323–24. Scienter is sufficiently pled under the PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324.

In evaluating whether a complaint satisfies the "strong inference" requirement, courts must consider the allegations and other relevant material holistically, not "scrutinized in isolation." VeriFone, 704 F.3d at 701. Here, Plaintiffs argue that two sets of allegations in the Complaint support a strong inference of scienter.

First, Plaintiff alleges that Defendants had a motive to make material misrepresentations and omissions in the PPM. Specifically, Plaintiff alleges that Defendants entered into a consent order with the Commissioner of Financial Institutions and the FDIC, which required that the bank increase its tier-1 capital by $5 million. Complaint, ¶ 21; Opp. 12:16-17. Plaintiff argues that Defendants had a motive to misrepresent CBB's financial information in the PPM because "[i]f CBB failed to increase its capital, it faced the possibility of further FDIC enforcement actions." Opp., 12:21-22.

Motive alone does not establish a strong inference of scienter. "[A]lthough facts showing mere reckless or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a *strong* inference of recklessness." In re

10

Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 974 (9th Cir. 1999), superseded by statute on other grounds (emphasis in original). It may be true that Defendants were motivated to raise capital to avoid further regulatory action. But the same would be true for any bank or bank managers in Defendants' position. Without more, Plaintiff's allegations of motive do not support a compelling inference of fraudulent intent or recklesness. Plaintiff argues that "[a]llegations of motive and opportunity or conscious misbehavior/recklessness are sufficient to establish fraudulent intent." Opp. 12:6-7. But the post-PSLRA cases he cites for that proposition indicate only that "motive can be a relevant consideration," and that "the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint." Tellabs, 551 U.S. 308 at 325; see also In re Gentiva Sec. Litig., 932 F. Supp. 2d 352 (E.D.N.Y. 2013) (finding scienter insufficiently pled and noting that "the motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not establish the requisite scienter") (internal citation omitted). VeriFone stated specifically that "[f]acts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." 704 F.3d at 701.

Second, Plaintiffs argue that the nature of the misrepresentations themselves make an inference of scienter compelling. Opp., at 12:25-13:2. However, as discussed at Part III-A-1, *supra*, the Complaint does not allege with particularity sufficient facts to plead a claim that Defendants subjectively knew that the statements were false or misleading when made. Therefore, the Complaint also does not plead sufficient facts making a "cogent" case, at least as compelling as other explanations, that Defendants made any misstatement with the intent to deceive or with reckless disregard.

Assessing the allegations holistically, the Complaint does not raise a strong inference of scienter.

### 3. Materiality[5]

To plead a Section 10(b) claim, Plaintiff must allege that Defendant made a statement that was "misleading as to a material fact." Basic Inc. v. Levinson, 485 U.S. 224, 238 (1988). In Basic, the Supreme Court explained that, in order to satisfy the materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor has having altered the 'total mix' of information made available." Id. at 231-32. "[I]n other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." Brody v. Transitional Hospitals Corp., 280 F.3d 997, 1006 (9th Cir. 2002).

Defendants argue that the PPM, far from representing a state of affairs that differs from the actual facts, actually paints a grim picture of a bank struggling to recover in difficult economic conditions. See, e.g., PPM, at CBB-46 ("[w]e may incur further losses especially in light of economic conditions . . . [w]e may not be able to sustain our historical rate of growth or may not even be able to grow our business at all"). Specifically with regard to CBB's loaning practice, the PPM states that "[a]s a result of these financial and economic crises, many lending institutions, including [CBB], have experienced declines in the performance of its loans." Id. at CBB-35. According to the PPM, CBB's nonperforming loans totaled $3.33 million as of June 30, 2010, representing 3.93% of its loans. Id. Therefore, Defendants argue that the omitted information about CBB's loans would not be perceived by a reasonable investor to alter the total mix of information and create an impression of a state of affairs that differs in a material way from the one that actually exists. Id.

At trial, the burden will be on Plaintiff to demonstrate sufficiently compelling facts

---

[5] The Court agrees with Plaintiff that Defendants did not directly raise this argument in either of their motions to dismiss, Opp. 7:15-17. Ordinarily, the Court would not consider or address an argument made for the first time on reply. Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006). However, since the Court will dismiss the complaint without prejudice, it addresses the issue for the benefit of the parties in the event that Plaintiff amends the complaint.

outweighing these considerations to show that the alleged misstatements about CBB's loan reserves were nonetheless material to a reasonable purchaser. But neither the PLSRA nor Rule 9(b) suggest that the materiality element, if viewed as distinct from the element of falsity, is subject to a heightened pleading requirement. "Questions of materiality . . . involv[e] assessments peculiarly within the province of the trier of fact." Siracusano v. Matrixx Initiatives, Inc., 585 F.3d 1167, 1178 (9th Cir. 2009) (internal citations and quotation marks omitted) aff'd, Matrixx Initiatives, Inc. v. Siracusano, ___ U.S. ___, 131 S. Ct. 1309, 1322-24 (2011). "Thus, the ultimate issue of materiality is appropriately resolved as a matter of law only where the omissions are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." Siracusano, 585 F.3d at 1167.

Defendants cite no precedential authority holding that a comparable Section 10(b) claim must be dismissed the pleading stage for failing to sufficiently plead the materiality of the alleged misstatement. In the single case Defendants do cite, see Reply Brief 4:25-27, the court found that the plaintiffs had failed to sufficiently plead a "misrepresentation or omission of a material fact" on several of his claims, but the court's analysis dealt with whether the statements were actionable misrepresentations; it did not separately discuss the materiality of the misrepresentations. Twinde v. Threshold Pharm. Inc., Case No. 07-cv-4972 CW, 2008 WL 2740457, at *11-16 (N.D. Cal. July 11, 2008). This authority provides no support for dismissal. Siracusano, on the other hand, provides authority for the argument that dismissal would be error, since it is at least plausible to infer from the facts of the Complaint that a reasonable investor would find the alleged misstatements to be material. 585 F.3d at 1180.

Assuming *arguendo* that Plaintiff had sufficiently pled an actionable misleading statement, the element of materiality is sufficiently pled in the Complaint.

### 4. Loss Causation

Under Section 10(b), securities fraud plaintiffs must plead "loss causation," specifically, the "causal connection between the [defendant's] material misrepresentation and the [plaintiff's] loss." Dura Pharm. Inc. v. Broudo, 544 U.S. 336, 342 (2005). Loss causation can only be

13

established if the plaintiff shows "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. Otherwise, the loss in question was not foreseeable." Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005). Stated differently, plaintiffs will survive a motion to dismiss if they allege that the defendant's 'misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value of' the security." In re Charles Schwab Corp. Sec. Litig., 257 F.R.D. 534, 547 (N.D. Cal.2009) (quoting Lentell, 396 F.3d at 177).

Plaintiff alleges that CBB failed to disclose and account for loans issued to the Maturin Group and Tom Dean until after IPF purchased CBB's stock, when those loans were properly addressed in the form of a charge-off of $1 million and increase in the loan loss reserve. Complaint ¶ 32. Plaintiff alleges that the charge-off caused CBB's tangible book value to decrease by $0.75 a share less than a month after the purchase. Id. The allegation is sufficient if "the failure to disclose th[e] fact caused [the] injury through [the plaintiff's] undervaluation of the risk it was undertaking in accepting the [investment]." Charles Schwab, 257 F.R.D. at 547 (quoting Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir.1997)).

Plaintiff's allegation is sufficient to plead loss causation, provided that Defendants concealed the loans in a manner that involved making material misstatements or omissions to the public.

### 5. The "Bespeaks Caution" Doctrine

Under the "bespeaks caution" doctrine, a court "rule[s] as a matter of law that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1408 (9th Cir. 1996). It is applied where "optimistic projections coupled with cautionary language . . . affect[] the reasonableness of reliance on and the materiality of those projections." In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1414 (9th Cir. 1994). For the doctrine properly to apply, there must be sufficient "cautionary language or risk disclosure that reasonable minds

1    could not disagree that the challenged statements were not misleading." Fecht v. Price Co., 70
2    F.3d 1078, 1082 (9th Cir. 1995).

3          Defendants argue that Plaintiff's claim is barred by the "bespeaks caution" doctrine
4    because the PPM contained forward-looking statements for potential investors, accompanied with
5    cautionary language "that some loans might fail to perform, thereby affecting the bank's allowance
6    for loan losses and the value of CBB's stock." CBB Mot., at 14:1-9. In support of their argument,
7    Defendants refer to numerous passages in the PPM that contain cautionary language. Id., at 13-16.
8    But the fact that the PPM contains some cautionary language does not protect the entirety of the
9    PPM from liability under the "bespeaks caution" doctrine. Rather, the cautionary language must
10   "relate directly to that which plaintiffs claim to have been misled." In re Worlds of Wonder Sec.
11   Litig., 35 F.3d 1407, 1415 (9th Cir. 1994).

12         As discussed at III-A-1, *supra*, the primary allegation in the Complaint is that the PPM did
13   not disclose several troubled loans and that statements concerning loan loss reserves did not
14   adequately reflect these loans. Complaint ¶ 25. And as Defendants themselves emphasize, the
15   PPM primarily described the company's then-current condition as of September 28, 2010. See
16   Defts Mot., at 3:2-5. "[S]tatements regarding loan loss reserves are generally not considered to
17   describe expectations for a company's future, but are regarded instead as directed to its then-
18   present financial condition." Oklahoma Firefighters Pension & Retirement Sys. v. Student Loan
19   Corp., ___ F. Supp.2d ___, 2013 WL 3212297, at *14, n.12 (S.D.N.Y. June 15, 2013); see also In
20   re SLM Corp. Sec. Litig., 740 F. Supp. 2d 542, 566 (S.D.N.Y. 2010) ("[S]tatements regarding loss
21   reserves are not [forward-looking] projections [if] they are directed to the then-present state of the
22   Company's financial condition") (citation omitted).

23         As many courts have observed, it would be inappropriate to insulate statements about loan
24   loss reserves from securities fraud liability, since "a financial institution which 'deliberately hides
25   its financial status to provide adequate loss reserves could significantly affect the behavior of a
26   reasonable investor.'" Winslow v. BancorpSouth, Inc., Case No. 3:10-00463, 2011 WL 7090820,
27   at *18 (M.D. Tenn. Apr. 26, 2011) report and recommendation approved, Case No. 3:10-CV-
28

00463, 2012 WL 214635 (M.D. Tenn. Jan. 24, 2012) (quoting In re PMA Capital Corp. Sec. Litig., Case No. 03-6121, 2005 WL 1806503, at *12 (E.D. Pa. July 27, 2005). Since Plaintiff's allegations that the PPM failed to disclose several troubled loans rely on facts that are necessarily historic in nature, rather than forward-looking, the "bespeaks caution" doctrine is not applicable.

### B. Section 20(a) of the Exchange Act

Absent an underlying violation of the Exchange Act, there can be no control person liability under Section 20(a). Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1161 (9th Cir.1996). Because Plaintiff has not sufficiently pled a violation of Section 10(b), his control person claim also must be dismissed. See Shurkin v. Golden State Vinters, Inc., 471 F.Supp.2d 998, 1027 (N.D.Cal.2006), aff'd, 303 Fed. Appx. 431 (9th Cir. 2008).

### C. State Claims

Defendants also move to dismiss the Complaint's other causes of action, all of which arise under state law. The only jurisdiction this Court might exercise over those claims is supplemental jurisdiction, pendent from Plaintiff's two federal claims, which the Court will now dismiss. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7 (1988).

Because the Court will grant Plaintiff leave to amend his complaint to cure his defective federal claim, the court does not address the validity of Plaintiff's state law claims now, since it is unlikely that the Court will retain jurisdiction of this case if Plaintiff is unable to plead a viable federal claim.

If he amends his complaint, Plaintiff should take the opportunity to reexamine his state law claims in light of the objections raised in Defendant's motion, and make any amendments or corrections that he thinks advisable. The court will evaluate the adequacy of the state law claims if and when the need arises.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Defendants' Motion to Dismiss. The Court DENIES IN PART Defendants' motion insofar as it seeks to dismiss Plaintiff's state-law claims, since the Court does not exercise jurisdiction over those claims at this time. The claims in the Complaint's first two causes of action are DISMISSED WITHOUT PREJUDICE. If Plaintiff wishes to file an amended complaint with additional facts that demonstrate that he has viable claims, he has leave to do so within thirty days of this order. Failure to do so may result in dismissal with prejudice.

**IT IS SO ORDERED**.

Dated: October 30, 2013

_____
JON S. TIGAR
United States District Judge