UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS A. SEAMAN,

    Plaintiff,

    v.

CALIFORNIA BUSINESS BANK, et al.,

    Defendants.

Case No. 13-cv-02031-JST

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE**

Re: ECF Nos. 47 & 62

## I. INTRODUCTION

Defendants California Business Bank ("CBB") and individual officers and directors Raffi D. Krikorian, Michael Maluccio, Cole W. Minnick, Jr., Jane Auserwald, Peggy Hansen, Mladen Buntich, Steven Hong, Biff Naylor, Kenneth Thomas, Gary Cross, Ellwood Johnson, and N. Aaron Yashouafar ("Individual Defendants")[1] (collectively with CBB, "Defendants") have moved to dismiss the First Amended Complaint ("FAC") in this action with prejudice ("Motion"). The matter came for hearing on February 16, 2014.

## II. BACKGROUND

### A. Factual Background

The facts most pertinent to this dispute are statements contained in CBB's Private Placement Memorandum ("PPM"), on which Investors Prime Fund, LLC and IPF Banc Servicing, LLC (collectively, "IPF") allegedly relied in purchasing CBB's shares of stock. Exh. 1 to FAC.

---

[1] The Court's previous order erroneously stated that the previous motion to dismiss was brought on behalf of all of these defendants, including N. Aaron Yashouafar. In fact, Defendant Yashouafar did not appear in this action until after the Court granted the other defendants' motion to dismiss, and after the other defendants filed the instant motion to dismiss the first amended complaint. Pursuant to the parties' stipulation, Defendant Yashouafar has now filed a motion for joinder in the instant motion. See ECF Nos. 60-62.

1  The Court considers it, as well as the exhibits to the FAC and to the Motion other than the CBB's
2  year-end audited financial report,[2] because the complaint refers to and necessarily relies on those
3  documents, they are central to Plaintiff's claim, and no party questions their authenticity.  See
4  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (citing Marder v. Lopez, 450
5  F.3d 445, 448 (9th Cir. 2006)).  As for the additional facts, the Court "construe[s] the complaint in
6  the light most favorable to the plaintiff, taking all [his] allegations as true and drawing all
7  reasonable inferences from the complaint in [his] favor."  Doe v. United States, 419 F.3d 1058,
8  1062 (9th Cir. 2005).  Although a Rule 12(b)(6) motion requires that the "court must accept as true
9  all of the allegations contained in a complaint," that standard "is inapplicable to legal conclusions"
10 and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
11 statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

12      CBB is a banking corporation headquartered in Los Angeles, California and incorporated
13 under the laws of the state of California.  FAC ¶ 8.[3]  In March 2010, CBB entered into a consent
14 order with the Commissioner of Federal Deposit Insurance Corporation ("FDIC").  ¶ 19.  As part
15 of the consent order, CBB was required to (1) increase its Tier 1 capital by $5 million and develop
16 and implement a capital plan; (2) adopt a revised policy for determining the adequacy of its
17 Allowances for Loan and Lease Losses ("ALLL"), a measure of the reserve for bad debts;
18 (3) provide periodic reports to the regulatory agencies; and (4) provide CBB's shareholders with a
19 description of the Consent Order.  ¶ 19.   The Consent Order also required CBB to "fully and
20 fairly disclose every material change or development regarding the Bank and its operations," and
21 to provide a notice that subscribers may rescind their subscriptions.  ¶ 20.

22      As required by the Consent Order, CBB offered for sale a minimum of 1,666,667 shares of
23 its common stock, at a price of $3.00 per share, beginning on September 28, 2010.  ¶ 23.  In
24 connection with the offering, CBB issued a Private Placement Memorandum ("PPM") on
25 September 28 to inform potential investors of the financial state of CBB as well as the risks

---

[2] The parties now agree that the Report was not included in the Update Letters sent by CBB.  See Reply 9:21-10:10.
[3] All subsequent paragraph citations are to the FAC.

1    entailed in purchasing CBB's stock. ¶¶ 23-24. In the PPM, Defendants represented "that CBB
2    had $8,300,000 in Tier-l capital," and did not disclose any information about the status of
3    "approximately $5,000,000 in loans" whose collectability Plaintiff charges was at that time
4    "highly questionable." In November 2010 and March 2011, CBB issued letters to its subcribers,
5    which made no reference to loan defaults or required loan loss reserves, but stated that "[t]he Bank
6    feels confident that the current level of reserves are sufficient to cover potential identified losses in
7    the portfolio." ¶ 43.
8         On June 28, 2011, IPF purchased 330,000 shares of CBB common stock at $3.00 per share
9    for a total purchase price of $990,000, before CBB was forced to recognize $3 million in losses.
10   ¶¶ 7, 24. Sometime after June 2011, after a regulatory examination of its financial records, CBB
11   was forced to recognize approximately $3 million in losses that reduced the value of CBB's stock.
12   ¶ 47.

### B.  Procedural History

14    Plaintiff Thomas Seaman ("Plaintiff"), in his capacity as court-appointed receiver of IPF,
15   brought a securities fraud complaint against Defendants. ECF No. 1. The initial complaint
16   brought causes of action for (1) securities fraud under Sections 10(b) and 20(a) of the Securities
17   Exchange Act of 1934 ("Exchange Act"); (2) material misrepresentation under California
18   Corporations Code Section 25401; (3) joint and several liability of management principals under
19   California Corporations Code Sections 25401, 25501, and 25504; (4) fraud and deceit, and
20   negligent misrepresentation; (5) violation of California's Unfair Competition Law, Cal. Bus. &
21   Prof. Code § 17200 *et seq.*, and (6) relief by imposition of constructive trust. Id.
22    In October 2013, the Court dismissed Plaintiff's Exchange Act claim without prejudice,
23   after concluding that the complaint failed to plead falsity and scienter with the specificity required
24   by the PSLRA. Order Granting Defendants' Motions to Dismiss ("October 2013 Order"), 2013
25   WL 5890726, ECF No. 32. The Court declined to exercise supplemental jurisdiction over the
26   state-law claims in this non-diverse action in the absence of a viable federal claim. With the
27   Court's leave, Plaintiff filed the amended complaint which re-asserted all claims after adding
28   additional factual allegations. This motion followed.

### C. Legal Standards

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is barred as a matter of law. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

Rule 9(b)'s heightened pleading standard under applies to securities fraud actions. Semegen v. Weidner, 780 F.2d 727, 730-31 (9th Cir. 1985). Rule 9 requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). The complaint must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Edward v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004).

Private securities fraud plaintiffs must also satisfy the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). In re VeriFone Holdings, Inc. Sec. Litig., 704 F.3d 694, 701 (9th Cir. 2012). Under the PSLRA, a securities fraud plaintiff must plead both falsity and scienter with particularity. See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

### D. Jurisdiction

Plaintiff brings a claim under Sections 10(b) and 20(a) of the Exchange Act. ¶ 3. As this cause of action arises under a federal statute, the Court has subject matter jurisdiction over that cause of action pursuant to 28 U.S.C. § 1331, as well as pursuant to the Exchange Act itself, 15 U.S.C. § 77aa.

## III. ANALYSIS

Defendants move to dismiss the FAC with prejudice, since, like the initial complaint that preceded it, it fails to plead falsity and scienter with the particularity required by the PSLRA.

The gravamen of the FAC is that Defendants made false or misleading statements about the sufficiency of its loan loss reserves.  "[A] loan loss reserve . . . is defined in the banking trade as a 'statement of condition, or balance sheet, account set up by a bank based on its expecations about future loan losses.'"  Shapiro v. UJB Fin. Corp., 964 F.2d 272, 281 (3d Cir. 1992) (citing Bankers Association, Banking Terminology 215 (1989)).  Specifically, Plaintiff alleges that Defendants made false and misleading statements in the PPM and in supplemental letters purporting to update the PPM, that they "did not disclose material information to potential investors, . . . misrepresented and inflated CBB's loan portfolio and thus overstated CBB's capital and book value by failing to disclose problems with numerous loans, including loans CBB made to its directors."  ¶ 2; see also ¶ 26 (Defendants intentionally misrepresented the amount of CBB's Tier-1 capital).  Plaintiff maintains that "Defendants falsely represented in the PPM that CBB had $8,300,000 in Tier-l capital," and in doing so "failed, among other things, to properly reserve for approximately $5,000,000 in loans that" whose collectability was "highly questionable."  ¶ 30.

The Ninth Circuit has very recently summarized the PSLRA pleading requirements pertinent to this case as follows:

> **A.    The Dual Pleading Requirements**
>
> Section 10(b) of the Securities Exchange Act of 1934 provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered ... any manipulative or deceptive device or contrivance . . . ." 15 U.S.C. § 78j(b).  Pursuant to this section, the Securities and Exchange Commission promulgated Rule 10b–5, which makes it unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b–5(b).
>
> To state a securities fraud claim, plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Thompson v. Paul, 547 F.3d 1055, 1061 (9th Cir.2008) (quoting Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.,

5

552 U.S. 148, 157 (2008)).

At the pleading stage, a complaint stating claims under Section 10(b) and Rule 10b–5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). In re VeriFone Holdings, Inc. Sec. Litig., 704 F.3d 694, 701 (9th Cir.2012). Under Rule 9(b), claims alleging fraud are subject to a heightened pleading requirement, which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). And since 1995, all private securities fraud complaints are subject to the "more exacting pleading requirements" of the PSLRA, which require that the complaint plead with particularity both falsity and scienter. Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir.2009).

**B.     Falsity and Materiality**

To plead falsity, the complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1)(B). If an allegation regarding the statement or omission is made on information and belief, the complaint must "state with particularity all facts on which that belief is formed." Id.

"Central to a 10b–5 claim is the requirement that a misrepresentation or omission of fact must be material." In re Cutera Sec. Litig., 610 F.3d 1103, 1108 (9th Cir.2010). A statement is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1976) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). To plead materiality, the complaint's allegations must "suffice to raise a reasonable expectation that discovery will reveal evidence satisfying the materiality requirement, and to allow the court to draw the reasonable inference that the defendant is liable." Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1323 (2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007), and Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)) (internal citations and quotation marks omitted). "Although determining materiality in securities fraud cases should ordinarily be left to the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." In re Cutera, 610 F.3d at 1108 (internal citations and quotation marks omitted).

### C.     Scienter

Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976).  To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2)(A) (emphasis added).  Under the analysis set forth by the Supreme Court in Tellabs, a court must first accept all factual allegations in the complaint as true.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court must then "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Id.

A strong inference of scienter "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 314.  The inference must be that "the defendant[ ] made false or misleading statements either intentionally or with deliberate recklessness." Zucco, 552 F.3d at 991 (emphasis added) (internal quotation marks omitted).  Deliberate recklessness means that the reckless conduct "reflects some degree of intentional or conscious misconduct." S. Ferry LP, No.2 v. Killinger, 542 F.3d 776, 782 (9th Cir.2008).  "[A]n actor is [deliberately] reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 390 (9th Cir.2010) (quoting Howard v. Everex Sys., Inc., 228 F.3d 1057, 1064 (9th Cir.2000)).

Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not independently sufficient.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 974 (9th Cir.1999), abrogated on other grounds by S. Ferry LP, 542 F.3d at 784.  It may also be reasonable to conclude that high-ranking corporate officers have knowledge of the critical core operation of their companies.  S. Ferry LP, 542 F.3d at 785–86.

The Supreme Court has emphasized that courts "must review all the allegations holistically" when determining whether scienter has been sufficiently pled.  Matrixx, 131 S.Ct. at 1324 (quoting Tellabs, 551 U.S. at 326).  The relevant inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U .S. at 323; N.M. State Inv. Council v.

7

Ernst & Young LLP, 641 F.3d 1089, 1095 (9th Cir.2011).

Reese v. Malone, ___ F.3d ___, Case No. 12-35260, 2014 WL 555911, at *5-7 (9th Cir. Feb. 13, 2014).

As the Court noted in its October 2013 Order, misleading statements of opinion are actionable in securities claims, including those under Section 10(b), "if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading." Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1162-65 (9th Cir. 2009). See also In re Wells Fargo Sec. Litig., 12 F.3d 922, 926 (9th Cir. 1993) (in Section 10(b) action, "the deliberate failure to recognize problem loans, thus understating the reserve, constitutes an actionable omission or misrepresentation of existing fact which cannot be dismissed as a mere matter of internal mismanagement, unsound business practice, or poor accounting judgment"); [4] see also Reese, 2014 WL 555911, at *16 (quoting Kaplan v. Rose, 49 F.3d 1363, 1375 (9th Cir.1994) ("[a] statement of belief is a 'factual' misstatement actionable under Section 10(b) if (1) the statement is not actually believed, (2) there is no reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy'").

Plaintiff has added a set of new allegations providing further detail about information Defendants knew about CBB's loans – that certain loans had gone into default, that CBB was pursuing litigation to collect them, and that other events had endangered CBB's collateral on defaulting loans. ¶¶ 31-42. But the FAC, like the initial complaint, fails to plead facts sufficient to show that Defendants' projections about the adequacy of its loss reserves were false or misleading statements made with the intent to deceive or with deliberate recklessness.

Loan reserves exist in the first place because of the likelihood that some portion of a bank's loan portfolio will go into default. Therefore, the fact that Defendants knew that certain of its loans were nonperforming or in default, standing alone, does not render Defendants' projections about the adequacy of its loan loss reserves false or misleading when made. Plaintiff cites no authority suggesting that, in projecting the adequacy of its loan loss reserves, an offeror

---

[4] Wells Fargo was a pre-PSLRA case, but it remains good law on the question of whether a misrepresentation about the adequacy of a loan loss reserve is ultimately actionable.

must disclose every piece of information the offeror knows about troubled loans in its portfolio. And notably, while the Court specifically noted in the October 2013 Order that the initial complaint was unclear about the temporal relationship between the troubled loans and Defendants' representations, 2013 WL 5890726, at *4-5, the FAC also remains unclear on that and other details which are necessary to understand whether Defendants likely made statements with knowledge of, or deliberate disregard for, their falsity.[5]

Moreover, even assuming that Defendants knew about the questionable status of the loans, the FAC does not plead specific facts demonstrating that they must have known from those facts that CBB should expect such signficant loan *losses* that the loan loss projection was knowingly or recklessly false. Offering a projection about the adequacy of a loan loss reserve necessarily involves some degree of judgment about the possibility of future loss, and it is not securities fraud for that judgment to be in error. See Ronconi, 253 F.3d at 437 (9th Cir. 2001) ("[c]alling executives bad managers, or bad forecasters, does not plead fraud, except where it can be shown that they knew or were deliberately reckless in disregarding the misleading nature of their forecasts"). Plaintiff does not suggest that in making its projections in the PPM, Plaintiff deviated from accepted accounting procedures. See Christidis v. First Penn. Mortg. Trust, 717 F.2d 96, 100 (3d Cir. 1983). "Congress enacted the PSLRA to put an end to the practice of pleading 'fraud by hindsight.'" In re Silicon, 183 F.3d at 988.

Plaintiff also argues that even if the projections in the PPM were not false or misleading when made, CBB had a duty to update the projections, and did not do so in either of its post-PPM letters to subscribers. As the Court noted in its previous order, "[n]either the Supreme Court nor the Ninth Circuit have endorsed an affirmative duty to update or correct past statements," and even the circuits that have applied the duty to update have done so "only to statements that are clear, factual, and forward-looking." October 2013 Order, 2013 WL 5890726, at *5 (citing In re Yahoo! Inc. Sec. Litig., No. 11-cv-02732-CRB, 2012 WL 3282819, at *20 (N.D. Cal. Aug. 10, 2012).

---

[5] For example, the FAC notes that certain loans were in default at the time the PPM issued, but does not indicate why the collateral was known by Defendants to be insufficient to repay the outstanding debt. ¶¶ 31-34.

9

The FAC does add a new allegation that CBB's Consent Order with the FDIC required CBB to "fully and fairly disclose every material change or development regarding the Bank and its operations," and to provide a notice that subscribers may rescind their subscriptions. ¶ 20. Even assuming this requirement imposed an obligation upon Defendants that Plaintiff is entitled to enforce,[6] Plaintiff does not explain why this requirement necessarily requires an update on the status of every loan in the CBB's portfolio, or how the later developments in the status of the loans necessarily rendered the loan loss reserve projection in the PPM objectively false or misleading. Even if the Consent Order did require some revision, Plaintiff has not demonstrated why its explanation for the failure to provide such a revision – that Defendants were intentionally deceptive or reckless – is as plausible as the competing explanation that Defendants subjectively and non-recklessly believed, especially in light of the other cautionary language in the PPM, that it was providing a fair assessment of the state of the Bank's affairs.

The Court found in the Order that the initial complaint failed to plead facts showing scienter, since Plaintiff alleged only that (1) Defendants had a motive to deceive, and (2) the nature of the alleged misrepresentations suggests scienter. The only additional fact Plaintiff has alleged in the FAC that he claims tends to show scienter is the provision of the Consent Order which required Defendants to provide updates to subscribers. ¶ 19. The fact that CBB was subject to a consent order, and was being closely monitored by the FDIC, does not give Defendants a *greater* motive to lie or be reckless in its statements about the adequacy of its loan loss reserves. If anything, it would tend to suggest the opposite.

Asked at oral argument for the best authority supporting a duty to update the status of loan reserves, Plaintiff's counsel cited Marques v. Wells Fargo Home Mortgage, Inc., No. 09-cv-1985-L-RBB, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010). Marques did not involve the PSLRA; it was a home foreclosure case brought by a homeowner who had been refused a loan modification by his loan servicer. Id. at *1. Marques held only that the homeowner in that case "may be able to

---

[6] "[I]ncidental third-party beneficiaries may not enforce consent decrees, but intended third-party beneficiaries may." United States v. FMC Corp., 531 F.3d 813, 820 (9th Cir. 2008). The Court does not reach the question of whether Plaintiff is an incidental or intended beneficiary.

10

state a claim against Defendant as an intended beneficiary of the" loan servicer's agreement with the federal government to provide loan modifications on certain terms. Id. at *7. Whatever support this case might provide to Plaintiff's authority to invoke the requirements of the Consent Order, it does not help Plaintiff leap the PSLRA's scienter and falsity hurdles.

As in the initial complaint, Plaintiff alleges in the FAC that Defendants had a financial and legal incentive to raise capital, giving rise to a motive to lie to investors about the nature of their offering. But while "[f]acts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent," they "are not sufficient to establish a strong inference of deliberate recklessness." In re VeriFone, 704 F.3d at 701 (citing In re Silicon, 183 F.3d at 974 (9th Cir. 1999)). As the Ninth Circuit recently re-emphasized, "[f]acts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not independently sufficient" to plead scienter. Reese, 2014 WL 555911, at *7 (citing In re Silicon, 183 F.3d at 974).

Plaintiff cites Tellabs for the proposition that "motive can be a relevant consideration," 551 U.S. at 325, but this point of law is not inconsistent with the Ninth Circuit's holding that motive alone is insufficient at the pleading stage. Also, in Tellabs, the Supreme Court was discussing the possibility that a *lack* of pecuniary motive might *exonerate* a defendant from having the required scienter. Id.

Besides motive, Plainfiff points only to the nature of the statements themselves as evincing a strong inference of scienter. For the reasons described *supra*, in analyzing the statements in isolation, the Court finds that Plaintiff has failed to plead the existence of an objectively false or misleading statement that Defendants made with intent to deceive or deliberate recklessness. After assesssing the statements in the PPM and Update Letters "holisitcally," see In re Verifone, 704 F.3d at 702-04, the inference that Defendants knowingly or recklessly misrepresented the nature of its financial condition is even weaker. As the Court noted in its October 2013 Order, the PPM paints an overwelmingly cautious picture that candidly acknowledged the bank's precarious financial situation and in particular warned of the general possibility of a decline in the performance of CBB's loans. October 2013 Order, 2013 WL 5890726, at *7 (citing the PPM at -

11

35 & -46). With regard to the loan loss reserve statements specifically, the PPM warned specifically that if CBB's assumptions about loan payments were wrong, the allowance might not be sufficient to cover losses, and that worsening economic conditions could increase the level of nonperforming assets. PPM, at CBB-16-17. In the context of these cautionary statements, the inference that in representing the adequacy of its reserves Defendants knowingly or recklessly made a false or misleading statement is considerably weaker than competing explanations.

In Reese, the securities plaintiff challenged a BP official's statement that "corrosion [at an oil pipeline] . . . appeared to be occurring at a 'low manageable corrosion rate'" by demonstrating that "inspection data showed objectively high corrosion rates," and that it was more likely than not the official had access to that data. 2014 WL 555911, at *7-10. The plaintiff also successfully pled falsity and scienter as to BP's statement that "[m]anagement believes that the Group's activities are in compliance in all material respects with applicable environmental laws and regulations." Id. at *15. The accuracy of this statement was directly undermined by the fact that BP in fact was clearly in violation of numerous laws and regulations, facts which it would be absurd to believe BP top officials were ignorant of. Id. at *15-18.

But both of these statements are much more clearly false and misleading than a projection about the adequacy of loan loss reseves, and the Reese plaintiffs pled much more specific facts rendering plausible their allegation that the speaker did not believe the statements when they were made. The pled facts here do not adequately plead falsity or scienter.

### B. Section 12

Absent an underlying violation of the Exchange Act, there can be no control person liability under Section 20(a). Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1161 (9th Cir. 1996). Because Plaintiff has not sufficiently pled a violation of Section 10(b), his control person claim also must be dismissed. See Shurkin v. Golden State Vinters, Inc., 471 F.Supp.2d 998, 1027 (N.D. Cal. 2006), aff'd, 303 Fed. Appx. 431 (9th Cir. 2008).

### C. Leave to Amend

The Court previously dismissed the complaint without prejudice, and gave Plaintiff specific direction to add to any amended complaint additional factual allegations demonstrating

falsity and scienter. That Plaintiff "failed to correct these deficiencies in its . . . [amended complaint] is 'a strong indication that the plaintiff[] ha[s] no additional facts to plead.'" Zucco Partners, 552 F.3d 981, 1007 (9th Cir. 2009) (citing In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1098 (9th Cir. 2002)). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). The Court concludes that any further leave to amend would be futile.

### D. Supplemental Jurisdiction

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7 (1988). Since the sole federal claim in this non-diverse action will be dismissed, the Court will not exercise supplemental jurisidiction over the state-law claims in the FAC.

## IV. CONCLUSION

Defendants' Motion is GRANTED. Plaintiff's first cause of action is DISMISSED WITH PREJUDICE. Plaintiff's remaining causes of action are DISMISSED WITHOUT PREJUDICE toward Plaintiff raising them in a state-court action. Defendants shall submit a proposed order of judgment.

**IT IS SO ORDERED.**

Dated: April 2, 2014

JON S. TIGAR
United States District Judge